### GRAHAM v. STATE.

[81 South. 807, Division A, No. 20549.]

CRIMINAL LAW. *Judgment. Number of men on trial jury.*

The word "jury," as used in a judgment of conviction for murder imports and means that it consisted of twelve qualified jurors under the law of the state, and the expression in the judgment that "thereupon came a jury of good and lawful men of the county, to wit, —— and eleven others, etc.," shows on its face that the clerk unintentionally omitted to write one juror's name in the blank, and does not show affirmatively that the appellant was tried by only eleven men so as to render the judgment void.

APPEAL from the circuit court of Bolivar county.

HON. W. A. ALCORN, JR., Judge.

George Graham was convicted of murder and appeals. See also 80 So. 789.

The facts are fully stated in the opinion of the court.

*Roberts & Hallam* and *A. B. Sparkman* for appellant.

We urge upon the court's attention the fact that the record in this case shows affirmatively that the petit jury that convicted this appellant was an illegal and unlawful body; that it consisted of only eleven men, and was, therefore, not that jury contemplated by the constitution. The judgment recites: "Thereupon came a jury of good and lawful men of the county to wit:———— and eleven others, all duly elected, empaneled and sworn," etc. In other words, the entry of the judgment on the minutes of the court recited affirmatively that there came a jury consisting of eleven men and nobody else, or consisting of nobody and eleven men, and that by the jury as thus constituted the verdict of guilty of murder was returned, and on that verdict the judgment was rendered. The conviction is therefore invalid and the judgment void. The exact point is decided in the case of *Hunt* v. *State,* and in the case of *Scott* v. *State.* In the former, this court said:

The entry by the clerk of the verdict of the jury in these words; thereupon came the dictrict attorney, who prosecutes the pleas of the state, and Robert Hunt, the defendant herein, in his own proper person, and the said defendant herein, in his own proper person, and the said defendant, being solemnly arraigned, and charged on the indictment herein, pleaded not guilty as charged, thereupon came a jury of good and lawful, men, to wit: Hal Yerger, etc., etc., naming with Mr. Yerger eleven men only, that is to say, the clerk recites that there came a jury of good and lawful men to-wit, eleven men. In *Larillian* v. *Lane,* 8 Ark. 372, and in *Foote* v. *Lawrence,* (Ala.) 483, it was held that the clerk made the record at least contradictory by reciting that a jury came, and then by enumerating only eleven men as composing it, since every jury *ex vi termini* imports that there were

twelve men, and that in such case the court would assume that the clerk was right when he said that a jury, to wit: twelve men came, and wrong when he named only eleven as composing it. Though in several of our cases it seems understood that the word jury necessarily imports twelve men, it is clearly decided by several cases that the court must reverse when the clerk uses that word, and at the same time affirmatively certifies that less than that number composed the panel which tried the particular case: because the record before us affirmatively shows that the accused was tried by less than twelve men we must reverse and remand for a new trial." *Hunt* v. *State*, 61 Miss. 577.

In the Scott case, where the record affirmatively showed that the jury consisted of only eleven men, although the circuit clerk testified "that the jury was composed of twelve men, but that the name of one, giving it, was omitted from the record by a clerical error, this court said: "The error is incurable by any supplementary oral proof. It is not an irregularity merely. It is not an omission of a fact from the record which presumption may be involved to supply. It is a fatal defect, affecting the jurisdiction of the trial court. The constitutional right to trial by twelve men must be secured to every defendant, and a verdict of six men, or eleven men, is absolutely void; and a judgment founded on such nullity must necessarily be itself a nullity. The court undoubtedly had jurisdiction of the person of the relator and of the subject-matter, and ordinarily no other question will be considered on *habeas corpus*. But in the present case we see indisputably that by the intervention of an unauthorized agency, whereby the defendant's guilt of the crime laid to his charge was established, the jurisdiction of the court was broken and lost. There was no power to pronounce judgment, because there was no verdict of guilty on which to base it. In our view the relator stands just as if he had not been tried at all.

The verdict is a nullity, and the judgment upon it is a nullity.'' *Scott* v. *State*, 70 Miss. 247, 11 So. 657. The appellant therefore contends that, even though every other argument herein advanced fails him, the judgment of the court below must be reversed because the verdict upon which it was founded was a nullity, ''and a judgment founded on such nullity must necessarily itself be a nullity.'' For the reasons above set forth we respectfully ask the court to reverse the judgment appealed from.

*A. W. Dent,* attorney-general, for appellee.

The provision of the United States Constitution ''That trial for crimes, except in cases of impeachment, shall be by 'jury' (U. S. Const., art. 3, par. 2, sub-div. 3); and the Constitution of this state provides that: ''The right of trial by 'jury' shall remain inviolative (Sec. 31, Constitution of Mississippi).

The trial by ''jury'' is a constitutional right and when the convention incorporated the provision into the constitution of this state, it had reference to the ''jury'' trial as known and recognized by the common law. It is a well-established fact that a common law ''jury'' consists of twelve men, and as necessary consequence, since the constitution is silent upon the subject, the conclusion is irrestible that the framers of the instrument intended to require the same number.

''The word 'jury' as employed in the constitutional guaranty of the right of a trial by 'jury' means a common law jury of twelve men. All the authorities agree that one of the substantial features of trial by ''jury,'' which are to be as heretofore, is the number twelve. This cannot be altered, and the uniform result of the very numerous cases growing out of legislative attempts to make ''juries'' out of a less number is that

as to all matters which were the subject of "jury" trials at the date of a constitution, the right which is to remain inviolate is to a jury of twelve men. A "jury" is a body of twelve men assembled for consultation, argument, and mutual assistance in arriving at the truth. To constitute a "jury" every lawyer knows that twelve lawful men are necessary, and that without this number no "jury can exist." 4 Words and Phrases, p. 3890.

"A trial by a 'jury' means something more than a trial by twelve men; the term 'jury' imports a trial of twelve men possessing the requisite qualifications for 'jury' duty, impartial toward the parties, living within the jurisdictional limits of the court, drawn and selected by impartial and disinterested officers, duly impaneled under the direction of a competent court and sworn to render an impartial verdict according to the law and the evidence; and proceeding in their deliberations in the presence and under the direction of a competent court and sworn to render an impartial verdict according to the law and the evidence; and proceeding in their deliberations in the presence and under the supervision of a judge impaneled to instruct them on the law and to advise them on the facts, and except on acquittal of a criminal charge, to set aside their verdict if in his opinion it is against the law and the evidence." (24 Cyc. p. 98, and cases there cited.) The term "jury" when used without any qualification, addition, or prefix imports a body of twelve men. This was the meaning of the term at common law and constitutional provisions guaranteeing or preserving the right to trial by "jury" have uniformly been construed as contemplating a "jury" of this number, (24 Cyc., p. 98.)

The judgment complained of in this record on page 82, among other things, recites: "thereupon came a jury of good and lawful men of the country, to wit: ——

and elven others, all duly elected, impaneled and sworn, etc.'' The words, "to wit: and eleven others" do not stand for anything at all. They are harmless; appellant's rights were not affected, either one way or the other—you might say they are surplus words— meaningless. When the clerk wrote "thereupon came a jury of good and lawful men, etc." that's all that the state could ask; that's all that the appellant could ask. The word "jury" imports a body of twelve men. The clerk in the case at bar did not name any one of the "good and lawful" men that composed the jury. It was not necessary for him to name the men that composed the jury in this judgment nor in any other judgment. It will be observed that the constitution does not secure to the appellant any particular mode of trial nor any particular method of jury selection. It secures simply the right to a trial by a common law jury of twelve men. Judge COOLEY in his work on Constitutional Law (3 Ed.), p. 321, says: "By a 'jury' in the constitution is meant a common law jury.' This is a tribunal of twelve men impartially selected for the purpose of the trial in accordance with the rules of law previously established. We submit that if the clerk had undertaken to name the persons that composed the "jury" and had not named twelve, then the case at bar would have fallen within the *Hunt Case,* 61 Miss. 577, and the *Scott Case,* 70 Miss. 247, and would have been a reversible error.

In the *Hunt Case, supra,* the record recites that "thereupon came a jury of good and lawful men, to wit," setting them out by name but naming only eleven men, held, that the record affirmatively shows a trial by only eleven men,

In the case at bar, the record recites that "thereupon came a jury of good and lawful men" but does not name any one of the persons composing the "jury."

Now, in the *Hunt Case, supra,* the court held that "where the record recites that a 'jury came' without undertaking to enumerate the word 'jury' imports *ex vi termini* twelve men, but in addition the clerk at the same time certifies affirmatively in a particular case that less than twelve composed the panel, the case must be reversed."

Now, is there any qualification, addition, or prefix to the word "jury" in the judgment complained of here by the term of words, "to wit: and eleven others?" We submit that it does not qualify, add to, nor take from the term "jury" in the case at bar. This case should be affirmed.

SYKES, J., delivered the opinion of the court.

George Graham was convicted of murder and sentenced to life imprisonment in the penitentiary, from which judgment and sentence of the court this appeal is prosecuted. While there are numerous assignments of error which have been ably argued by counsel for appellant, there is only one which we think of sufficient importance for a written opinion.

It is contended that the record in this case shows affirmatively that the petit jury which convicted appellant was an illegal and unlawful body because it consisted of only eleven men, and was therefore not that jury contemplated by the Constitution.

That part of the judgment material to this decision is as follows: "Thereupon came a jury of good and lawful men of the county, to wit, ———— and eleven others, all duly elected, impaneled, and sworn.

To sustain his position the appellant relies upon the cases of *Hunt* v. *State,* 61 Miss. 577, and *Scott* v. *State,* 70 Miss. 247, 11 So. 657, 35 Am. St. Rep. 649.

In the *Hunt Case, supra,* the clerk, in entering the judgment, after reciting that there "came a jury of

good and lawful men, to wit," attempts then to name all of the members of the jury, but only named eleven men. The opinion of the court then asks the question:

"Must the judgment sentence be reversed because the record affirmatively shows that the defendant was convicted by eleven men only?"

And then: "No case could be reversed in this court by reason of any error or omission in the record even as to jurisdictional facts, and that therefore, when the error consisted of an omission to show even such a fact, we would assume that such fact existed unless the record affirmatively showed that, in fact, it did not exist. . . . Is the present an instance only of an omission to show that there were twelve men on the jury, or is it a case where the record affirmatively shows that there were eleven only? If it was merely an omission to show anything on the subject, the cases quoted above would govern it, otherwise not. . . . Though in several of our cases it seems understood that the word 'jury' necessarily imports twelve men, it is clearly decided by several cases that the court must reverse when the clerk uses that word, and at the same time affirmatively certifies that less than that number composed the panel which tried the particular case." *Hunt Case, supra.*

The Scott Case is practically similar to the Hunt Case.

If the judgment in this case affirmatively showed that the appellant was tried by only eleven men, then it would be our duty under the two above authorities to reverse this case. The judgment in each of these two cases, however, after reciting that the appellant was tried by a jury, attempted to name all of the members of that jury, and in so doing affirmatively showed that there were only eleven men who composed it. The judgment in this case is quite different from those. This judgment recites that appellant was tried by a jury.

There was no necessity to name all or any of the jury. The word "jury" imports and means that it consisted of twelve qualified jurors under the laws of the state. This general expression was modified in the Hunt and Scott Cases by the clerk naming, or rather attempting to name, every member of the jury. In the case at bar, however, it was evidently the intention of the clerk to insert in the blank space the name of one of the members of the jury. This he failed to do. This qualifying phrase then, namely, "———— and eleven others," is ambiguous and shows upon its face an omission of the clerk. We are asked to hold that this ambiguous phrase nullifies the meaning of the word "jury." This ambiguous phrase, really meaningless, unless we assume that the name of a juror was unintentionally omitted, cannot be said to affirmatively show that the appellant was tried by only eleven men. The phrase is either meaningless or shows upon its face an omission by the clerk to insert the name of one of the twelve jurors. The rule announced in the Scott and Hunt Cases is that it must affirmatively appear from the judgment that the appellant was only tried by eleven men. Such fact does not affirmatively appear in this case.

The judgment of the lower court is affirmed.

*Affirmed.*