ATKINSON *v.* STATE.*

(En Banc. June 9, 1924. Suggestion of Error Overruled June 24, 1924.)

[100 So. 391. No. 23766.]

GRAND JURY. *When regular jury boxes quashed, prospective jurors not summoned from supervisors' districts in proportion to population; grand jurors need not be called in regular order one at a time from each supervisor's district.*

When the regular jury boxes have been quashed by the court, the only statute applicable to the summoning of a *venire facias* is section 2207 of Hemingway's Code, and under this section it is not required that the prospective jurors be summoned from the supervisors' districts in proportion to the population. Neither is it necessary in the drawing of the grand jury from the jurors thus summoned, that these jurors be called in regular order one at a time from each supervisor's district.

*Headnote 1. Grand Juries, 28 C. J., section 34 (1925 Anno); Juries, 35 C. J., section 259 (1925 Anno).

APPEAL from circuit court of Lauderdale county.
HON. C. C. MILLER, Judge.

Frank Atkinson was convicted of murder, and he appeals. Affirmed.

*Parker & Snow* and *Marion W. Reily,* for appellant.

I. Was the grand jury properly summoned? Under the laws of Mississippi prior to 1896, the juries, including the grand juries, were, or might be, drawn from the county at large. But in chapter 84 of the Acts of 1896, the legislature undertook to revise and rewrite all that portion of the jury law which permitted the drawing of the same from the county as a whole, and in the place thereof require the selection of juries from the different supervisor's districts.

This act requires that the supervisors in making up the jury list: "shall take them as nearly as they conveniently can from the several supervisor's districts in pro-

portion to the number of qualified persons in each.'' So
it will be seen that a difference in the number of quali-
fied persons for jury service, might exist in the several
supervisors districts, and that this difference should
receive recognition at the hands of the board of super-
visors in preparing the jury list.

The next feature of .jury selection was recognized and
provided for by the legislature in this act, by the fol-
lowing language: At each regular term of the circuit
court, and at a special term if necessary, the jury shall
draw in open court from the five small boxes enclosed in
the jury box, slips containing the names of fifty jurors,
to serve as grand and petit jurors for each subsequent
week of the next succeeding term of court, drawing the
same number of slips from each and every one of the five
small boxes if practicable.

We find nothing in this last provision depending upon
differences in population or the number of qualified per-
sons for jury service in the several districts. These
names are placed on the jury in proportion to the quali-
fied persons unless convenience requires a variation from
this rule. When the legislature selected the words ''if
practicable'' it must be construed to mean such limita-
tion as is properly found in the meaning of the language
used, and not applied so as to cover a condition which
might be thought to improve the law by giving to these
words a different meaning.

The trial court in this instance directed that this jury
be summoned in the ratio of five from one district to
one from each of the other districts. And the reason
given for so doing was that this method was necessary
because to draw one from each district, or an equal
number from each district was impracticable. And the
impracticability of so doing was due to no lack of qual-
ified persons in any district, but because there were more
than five times as many voters in one district as in any
of the others. Without any qualification, it is perfectly
manifest that the means were available from which a

jury could have been drawn with an equal number from each district, and therefore such selection was practi-- cable, and the drawing of this jury was not according to law, but in violation of law, at a time and under the conditions when this appellant was insisting, in the drawing or summoning of this jury, that the method provided by law be not ignored.

The supreme court has, from time to time, held high the warnings of law and fixed, as necessary, the requirements of the law in the organization of the grand jury. *McQuillen* v. *State,* 8 Sm. & M. 587, per Chief Justice SHARKEY; *Shepherd* v. *State,* 89 Miss. 154; *Stokes & Johnson* v. *State,* 24 Miss. 621; *Shepherd* v. *State,* 89 Miss. 147.

In presenting our motion in this case, before the grand jury was empaneled, the circuit clerk was offered as a witness and testified, that the approximate number of qualified male voters in the respective districts of the county were as follows: District 1, fifty-six hundred fifty-nine; District 2, four hundred seventy; District 3, nine hundred seventy-six; District 4, five hundred twenty-three; District 5, six hundred thirty-eight.

How are we going to find a definition of that word "practicable" which will be sufficiently elastic to authorize a court to bring the action of the trial judge within the terms of the law? If it means in proportion to the population, the law was not followed in this case. If it means, "capable of being done or accomplished with available means or resources," then the law was not attempted to be followed. In order to support the ruling of the court in this case it is necessary to give the words "if practicable" a strange and peculiar definition.

The positive requirements of the provisions of the statutes are of recognized importance and the courts in the trial of cases have no right to ignore these directions fixed by law, or by strained and unnatural constructions, seek to evade the obligations of observance of all the legal requirements. *Gibson* v. *State,* 70 Miss.

554; *Jones* v. *State,* 98 So. 150; *House* v. *State,* 98 So. 156.

II.   Does the Record Show That the Defendant Was Tried by a Legal Jury as Required by Law, or Were the Twelve Men who Sat in the Jury Box Sworn to Try the Issues as the Law Requires.   Section 1241, Hemingway's Code, section 1483, Code of 1906, provides a special oath which shall be administered to jurors in a capital case.

It will be seen by a close examination of the record that when each juror was called upon his *voir dire* examination he was sworn, the stenographer's notes of the *voir dire* examination of each juror being preceded by the following words: "having been duly sworn, testified as follows."   But further than that the record shows there was no further oath administered, except that administered to each witness when called.   The statute contemplates a specific oath rather than that administered on the *voir dire* examination, this court having expressed itself upon this identical proposition. *Miller* v. *State,* 84 So. 161.

And, until this further oath was administered, the twelve men accepted to try the case were not legal jurors and could not return a valid verdict in the case.

*R. H. Knox,* Attorney-General, for the state.

After the motion of the appellant, which was joined in by the district attorney for the state, was granted, the court ordered a new *venire facias* for fifty qualified persons to act as jurors, to issue as provided by law, and directed that the sheriff summon the fifty men in proportion of five men from Beat One, and one from the other beats respectively until the fifty men should have been drawn.   Section 2180, Hemingway's Code, controls.

We call the court's attention especially to the words "and shall take them as nearly as they conveniently can, from the several supervisor's districts in proportion to

135 Miss.—30

the number of qualified persons in each, excluding all who have served on the regular panel within two years, if there be not a deficiency of jurors." See *Purvis* v. *The State,* 71 Miss. 706, 14 So. 268; Section 2177, Hemingway's Code, is also important.

We fail to find from this record that the appellant was compelled to accept any juror who failed to qualify under this section of our Statute. It is contended in appellant's brief that the special oath was not administered in this case to the jury to try this case, as provided by section 1241, Hemingway's Code. On pages 279 and 280, second volume of this record, which is the judgment of the court, we find among other things mentioned in said judgment, the following: " . . . issue being joined, comes a jury of good and lawful men, duly sworn, instructed, empaneled and accepted by the state and the defendant, composed of E. W. Null, and eleven others." This record is practically identical with the record in *Hays* v. *The State,* 50 So. 557, where the judgment of the court was first reversed then affirmed on suggestion of error. The court said: Where the record is silent as to matters of this character, and no objection thereto has been made before verdict, the court is required to presume that the same have been rightfully and regularly done. *Ex parte Phillips,* 57 Miss. 357; *Spivey* v. *State,* 58 Miss. 743. This is true, even though the matter complained of is jurisdictional in its nature. The Hays case was followed and approved by this court in the case of *McFarland* v. *The State,* 110 Miss. 482.

Argued orally by *Marion W. Reily* and *H. H. Parker,* for appellant, and *E. C. Sharp,* Assistant Attorney-General, for the state.

SYKES, P. J., delivered the opinion of the court.

The appellant, Frank Atkinson, was indicted, tried, and convicted in the circuit court of Lauderdale county, of the murder of R. H. Bryant and sentenced to be hanged, from which judgment this appeal is here prosecuted.

The appellant Atkinson and Clyde Greer were jointly indicted. A severance was had. Greer was tried first, convicted and sentenced to be hanged, and that judgment was affirmed by this court several weeks ago.

It is unnecessary to recite the material facts relating to the killing; suffice it to say that the testimony of the state made out a case of murder.

Upon motion the jury box of Lauderdale county was quashed; the grand and petit jurors in attendance were discharged. The court then ordered the clerk to issue a *venire facias* commanding the sheriff to summon fifty qualified persons to act as jurors, and that the sheriff summon these men in proportion of five men from beat one and one from each of the other beats. The order of the court commanded the sheriff to summon twenty-six persons for jury service from district No. 1 and six persons from each of the other supervisors' districts to serve as grand and petit jurors. This order of the court was obeyed by the sheriff. The grand jury was organized by the court directing the sheriff to call eighteen jurors, five from beat one and one from each of the other beats. The grand jury was composed of ten men from district No. 1 and two men each from the other four districts. All of this was seasonably objected to by the defendant through his counsel, by objections, motion to quash, and otherwise before the grand jury was impaneled. All of which objections were overruled. The grand jury then returned this indictment.

It is contended by the appellant that it was the duty of the court, the sheriff, and the clerk, in summoning this venire, to have complied substantially with the laws relating to the drawing of the electors to serve on the juries by the board of supervisors. That is to say, that the venire in this case should have been drawn having in view the number of qualified electors in the respective districts, and that this venire should have been proportioned in accordance with the population of the respective districts. In other words, that the circuit judge,

sheriff, and clerk in drawing this venire should have substantially complied with and followed section 2180 of Hemingway's Code, and that this was not done.

It is also contended that the names of these jurors should have been drawn in regular order from the five boxes, instead of drawing five from beat one and one from each of the others.

When the regular jury boxes of this court were quashed, it thereby became the duty of the circuit judge to have other jurors summoned in accordance with section 2207, Hemingway's Code (2714, Code of 1906). This section alone is the one involved in this case. It provides that in cases of this kind "the court shall direct the requisite number of persons, qualified as jurors, to be summoned to appear at such times as the court shall appoint, and the court shall thereupon proceed as if the jurors had been regularly drawn and summoned." This statute provides for an emergency of this character, and under it the court is not required, either in having summoned or in organizing the grand and petit juries, to follow the statutes which relate to the drawing of juries by the board of supervisors. The only statute applicable is section 2207, Hemingway's Code, and it makes no difference under that section from what districts jurors are summoned or the number of jurors from each district who may sit upon either the grand or the petit juries. We find no error therefore in the action of the learned circuit judge in this matter.

It is also contended that the special oath was not administered to the jurors in this case as provided by section 1241, Hemingway's Code. The stenographer's notes do not show that this oath was administered. However, the judgment of the court recites that the jury was sworn. There was no objection made in the record to any failure to swear the jury. This case comes squarely within the rule announced in *Hayes* v. *State,* 96 Miss. 153, 50 So. 557, and *McFarland* v. *State,* 110 Miss. 482, 70 So. 563. There is therefore no merit in this objection.

There are certain objections to the introduction of testimony which have received our consideration. As a matter of fact, all of these questions relating thereto were settled in the case of *Greer* v. *State* (Miss.), 99 So. 905, adversely to the contention of the appellant.

The judgment of the lower court is affirmed, and Friday, July 25th, is fixed as the date of execution.

*Affirmed.*